IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SAJO, LLC, | ) CASE NO.  1:11 CV 2395 |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) JUDGE DONALD C. NUGENT |
| | ) |
| KEITH WOOLF, *et al.*, | ) |
| | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| Defendants. | ) |

This case is currently before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Alternative Motion for Judgment on the Pleadings. (ECF #34). Plaintiff filed a Memorandum in Opposition to the Motion (ECF #36), and Defendants filed a Reply. (ECF #41).  After considering all of the arguments presented by the parties, as well as the applicable law, the Court hereby GRANTS Defendants' Motion.

## **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff filed a Complaint seeking Declaratory Judgment against the named Defendants in November of 2011. The Complaint was amended in January of 2012. The First Amended Complaint ("Complaint") seeks a declaratory judgment that the transfer of intellectual property rights relating to the business concept of the "Paladar Latin Kitchen & Rum Bar" restaurant was valid and enforceable. Defendants were investors in the original Paladar restaurant in Woodmere Ohio, and allegedly agreed to authorize the licensing of the Paladar intellectual property for use in a new venture in Annapolis, Maryland. SaJo is an investor in the new venture. The Complaint alleges that future expansion is under consideration and SaJo has interest in making additional investments in the future ventures.

The Complaint alleges that the original Paladar was established by AJH Hospitality Group, LLC ("AJH"), and that the Defendants were all members of this company. The Complaint also alleges that after Paladar achieved success in Woodmere, the manager of AJH formed PLK Restaurants, LLC ("PLK") in order to facilitate the expansion of the Paladar concept into other markets. When PLK decided to open a new Paladar restaurant in Maryland, each of the original investors (making up AJH) was given the opportunity to invest. None of the Defendants in this action actually did invest in the new venture. Sometime after December 17. 2009, each of the Defendants, and all other member of AJH signed a written consent authorizing the transfer of any interest AJH had in the intellectual property rights of Paladar to PLK. AJH

---

[1] The facts relevant facts appear to be largely undisputed and have been derived from the First Amended Complaint and the Parties' Statements of Fact. To the extent there may be any material difference in the statements the source of the alleged facts has been noted and deference will be assigned in accordance with the appropriate standard of review.

later entered into an Intellectual Property Assignment and License Agreement with PLK.   The Agreement preserved AJH's right to perpetually use the intellectual property royalty-free in connection with the operation of the original Paladar restaurant in Woodmere, Ohio.

The Complaint further alleges that Plaintiff made an investment in Paladar Annapolis based on representations made in an Investor Memorandum provided by PLK.  PLK represented in this memorandum that it owns the intellectual property and goodwill rights associated with the Paladar name.  The Paladar Operating Agreement was also distributed to potential investors including SaJo, and two of the Defendants, by PLK.   SaJo eventually invested in Paladar Annapolis in August of 2010.   In its first year of operations, Paladar Annapolis has generated millions of dollars in gross revenue, and there are alleged plans to further expand the Paladar businesses by opening new locations.

The Complaint alleges that in December of 2011, Paladar Holdings, LLC was formed to serve as a parent holding company for all current and future Paladar restaurant entities.  Paladar Cleveland, LLC and Paladar Annapolis, LLC were then also formed.  The original AJH and Paladar Annapolis members were given the choice to take units in Paladar Holdings, or to accept a cash buy-out for their units in AJH.  The Defendants refused either option.  In December of 2011, AJH merged into and was replaced by Paladar Cleveland, LLC.  AJH no longer exists as a legal entity.  PLK transferred its interests in the Paladar intellectual property to Paladar Holdings, LLC.  The Complaint alleges that SaJo is a current member of Paladar Holdings.

As a previous member of the Paladar Annapolis restaurant, SaJo is also presumably a member of Paladar Annapolis, LLC.

In October of 2011, Defendants brought suit against Andrew Himmel, AJH's former

-3-

manager, and the founder of PLK. In the lawsuit, Defendants accused Mr. Himmel of breaching his fiduciary duties to AJH. According to court documents, these Defendants sought monetary relief from Mr. Himmel and other AJH members, as well as against Paladar Annapolis, LLC, and another individual affiliated with the Paladar business. Paladar Holdings was not named, and SaJo was not named in the underlying suit. The suit alleged damages for conversion, breach of fiduciary duty, and interference with an investment opportunity, among other things. The issue of intellectual property rights was raised in the state court action but there was no request to rescind the assignment(s) of rights or to invalidate the contracts involving that intellectual property. The state court action has been dismissed and the dismissal in on appeal.

In this case SaJo is seeking relief in the form of a declaratory judgment stating that the agreements and assignments relating to the Paladar intellectual property are valid and enforceable; that PLK is the rightful owner of the Paladar trade name and intellectual property; and that Paladar Annapolis, LLC and/or its successors can continue to use that intellectual property as represented in the investor materials. Defendants argue that SaJo has no standing to bring this action, and that even if it did, the case should be dismissed for failure to state a claim.

## **STANDARD OF REVIEW**

The parties agree that Defendants have made a factual attack on the question of the Court's subject matter jurisdiction in the instant action. They also agree that the Court may take judicial notice of a variety of documents submitted in support of the Defendants' motion. Accord, *Granader v. Public Bank*, 417 F.2d 75, 82 (6th Cir. 1969). When addressing a factual challenge to the Court's subject matter jurisdiction , the Court is "not to presume that the factual

allegations asserted in the Complaint are true." *Ohio Nat'l Life Ins. Co. v. Unites States,* 922 F.2d 320, 325 (6th Cir. 1990). Rather the Court may consider "affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts," and "will weigh the conflicting evidence to determine whether proper jurisdiction exists." *Busacca v. Excavating Bldg. Material & Const. Drivers Union Local 436 Welfare Fund Bd. Of Trs.*, 953 F.Supp. 867, 870-71 (N.D. Ohio 1996).

## LEGAL STANDARD

The standing requirement is based both in the constitutional limits imposed on federal jurisdiction, and in prudential concerns for the administration of the courts.

> The question of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975) (citing *Barrows v. Jackson*, 346 U.S. 249, 97 L. Ed. 1586, 73 S. Ct. 1031 (1953)). To satisfy the "case" or "controversy" requirement of Article III, which is the "irreducible constitutional minimum" of standing, a plaintiff must, generally speaking, demonstrate that he has suffered "injury in fact," that the injury is "fairly traceable" to the actions of the defendant, and that the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471-472, 70 L. Ed. 2d 700, 102 S. Ct. 752 (1982). In addition to the immutable requirements of Article III, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Id.*, at 474-475. Like their constitutional counterparts, these "judicially self-imposed limits on the exercise of federal jurisdiction," are "founded in concern about the proper--and properly limited--role of the courts in a democratic society," *Warth*, supra, at 498; but unlike their constitutional counterparts, they can be modified or abrogated by Congress, see 422 U.S. at 501.

*Bennett v. Spear*, 520 U.S. 154, 162, 17 S.Ct. 1154 (1997). For standing issues raised in the context of a request for declaratory judgment, the Declaratory Judgment Act governs, and

-5-

requires the existence of a "case of actual controversy." *Grand Trunk W.R.R. Inc. v. Bhd. of Maint. Of Way Emples.*, 643 F.Supp.2d 947 (N.D. Ohio 2009). Such a controversy exists if the parties "have adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" even though the injury-in-fact requirement for Constitutional standing involves an injury that "has not yet been completed." *Id.* at 948. The future injury alleged "must be almost certain to occur; mere speculation is insufficient." *Goleta*, 239 F.Supp.2d at 752.

## **ANALYSIS**

Plaintiff, SaJo, LLC argues in its briefing that it has suffered "an imminent or concrete and particularized injury" but does not specify in its brief what that alleged injury would be. When addressing this requirement, rather than outlining the actual perceived or feared injury, SaJo simply recites the elements of fraudulent inducement based on a failure to disclose information.[2] Despite the total absence of any description or allegation of a particularized injury in the briefing, giving all benefit to the Plaintiff, the Complaint appears to allege that somehow Plaintiff's investment in Paladar, and its right to invest in new ventures related to the Paladar restaurant brand have been compromised by a state court lawsuit that was brought by Defendants Paladar Annapolis, LLC and other third-party individual, and that has since been dismissed by

---

[2] Even if an injury had been alleged, the Complaint does seek any relief for a claim of fraudulent or negligent inducement. Further, any such claim that might have been made or inferred from the factual allegations in the Complaint would fail because the Complaint and the briefing fail to establish that Defendants had a relationship with Plaintiff that could lead to a duty to disclose the allegedly withheld information. Absent a duty to disclose, there is no cause of action and any claim for fraudulent inducement.

the state court.  SaJo gives no indication that it has or is likely to suffer any financial harm or that there has been any attempt to prevent Paladar Annapolis from using the intellectual property at issue.  Further, it offers no details about what exactly the alleged future investment opportunities may be, why they may no longer likely to be available, how they may have been diminished by the underlying state court suit, or why there is any likelihood (let alone an almost certainty) that a future injury will occur if this Court does not step in and declare the rights of the parties.  The Defendants brought suit against Paladar Annapolis and others seeking monetary relief for perceived wrongs committed during the corporate changes and development of the Paladar businesses.  They did not challenge the effectiveness of the assignment of intellectual property, nor did they seek to rescind the agreements leading to that assignment.  Further, the lawsuit brought by Defendants in state court has been dismissed (on the merits with regard to Paladar Annapolis, LLC).  Therefore, there is, quite simply,  no indication in the Complaint, in the state court records, or in the Plaintiff's briefing that SaJo faces an identifiable, particularized injury that has occurred or is almost certain to occur.  Absent this, SaJo has no standing to pursue this lawsuit.

Further, as argued by Defendants, prudential standing limitations would preclude a finding that SaJo has standing to pursue this action.  Prudential limitations include a "general prohibition on a litigant's raising another person's legal rights. . . ." *Allen v. Wright*, 468 U.S. 737, 751 (1984).   These limitations restrict access to federal courts to those litigants best suited to assert a particular claim.    The agreements that SaJo seeks to declare valid and enforceable are agreements to which it was not a party.  SaJo was not a party to the written consents allowing the transfer of rights, and neither SaJo nor these defendants were parties to the Assignment

Agreement that actually transferred the intellectual property rights to PLK    Even if this suit were successful, SaJo would not own the property rights at question, nor have the Defendants ever owned them.  Even Paladar Annapolis has no ownership interest in the rights at question.  Following all of the mergers outlined in the Complaint, the ownership of those rights rests with Paladar Holdings, LLC.    SaJo has not alleged any injury or fear of injury that is separate and distinct from the injury that would be suffered by the corporation, itself.  Therefore, if there were any valid dispute over the ownership of the intellectual property rights at question, that dispute would be between the parties who participated in the Assignment of rights and any subsequent transfer of those rights.   As an investor, SaJo's injuries (had any been effectively alleged) would be derivative and would have to be pursued by the corporation.  *See, e.g., B.&V. Distributing Co., Inc. v. Dottore Companies, LLC*, 278 Fed. Appx. 480, 485 (6th Cir. 2008).   Accordingly, SaJo lacks both Constitutional and prudential standing to pursue the instant action.

For the reasons set forth above, Defendants' Motion to Dismiss (ECF #34) is hereby GRANTED.   IT IS SO ORDERED.

     /s/ Donald C. Nugent  
     DONALD C. NUGENT  
     United States District Judge

DATED:  November 19, 2012